UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**, <br><br> Plaintiff, <br><br> v. <br><br> **D-7 ANTHONY DWAYNE OLIVER**, <br><br> Defendant. | 2:17-cr-20489 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Anthony Oliver requests that the Court modify his mandatory ten-year minimum sentence either by reducing it or by permitting him to serve the balance—some nine years and nine months—in home confinement. Oliver pled guilty in June 2019 to conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). He began serving his sentence on March 2, 2020.

Although Oliver styles his motion as one for compassionate release under 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, he appears primarily to seek release to home confinement. Because decisions about where a prisoner will serve his federal sentence are relegated to the United States Bureau of Prisons ("BOP"), with no mechanism for review by the sentencing court, this Court lacks jurisdiction to transfer Oliver to home confinement. Although Oliver has not provided significant factual or legal support for the

1

assertion that his sentence should be reduced (presumably to time served if he seeks immediate release) under 18 U.S.C. § 3582(c), the Court will nonetheless assess whether he meets the requirements for compassionate release. Because Oliver is not a good candidate for compassionate release, the Court will deny the motion, ECF No. 366, and will also decline to issue a judicial recommendation that the BOP transfer Oliver to home confinement to serve the rest of his sentence. Oliver's request, in the alternative, that he be granted temporary release until the COVID-19 pandemic is over will be denied without prejudice.

## BACKGROUND

A little over one year ago, Anthony Oliver pled guilty to conspiracy to distribute controlled substances, Count One of the Sixth Superseding Indictment, in violation of. 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A). ECF No. 220 (June 13, 2019 Plea Agreement). He acknowledged participating in a conspiracy from at least July 2015 through April 2018 with the intent to distribute at least one kilogram of heroin and at least 500 grams of cocaine. ECF No. 220, PageID.1678.

Oliver remained on bond between entering his guilty plea and his sentencing. Because he pled guilty to Count One, he faced a mandatory minimum sentence of 120 months, or ten years. The government calculated the applicable Sentencing Guideline range as 135–168 months. ECF No. 220, PageID.1679. On October 17, 2019, this Court sentenced Oliver to the mandatory minimum of 120 months in prison,

and five years of supervised release. ECF No. 301, PageID.2109 (Nov. 15, 2019 Judgment). He was allowed to surrender voluntarily and the Court in fact extended his reporting date from January 15, 2020 to approximately February 29, 2020 so that Oliver could attend a father-daughter dance with his daughters and celebrate his ten-year wedding anniversary. ECF No. 329. Bureau of Prisons records indicate Oliver ultimately reported on March 2, 2020. His projected release date, if he earns good-conduct credit, is September 6, 2028. ECF No. 373, PageID.2513 (Gov't Resp. Br.). Without good-conduct credit, Oliver's release date would be February 28, 2030. *Id.*

Prompted by concerns stemming from the COVID-19 pandemic, Oliver now asks the Court to allow him to serve the balance of his sentence—approximately nine years and nine months—in home confinement. Although he is only 36 years old, Oliver is obese; at 5"3 tall, he weighs 300 pounds. ECF No. 366, PageID.2494. He also suffers from asthma. ECF No. 374, PageID.2541 (BOP Med. Records). Although Oliver told BOP medical staff that he had not used an inhaler "in years," he was prescribed an albuterol inhaler upon entering custody. *Id.* at PageID.2543–44, 2555. The Centers for Disease Control ("CDC") has identified both severe obesity and asthma as factors that may put individuals "at high risk for severe illness from COVID-19." *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

3

higher-risk.html. Severe obesity is defined as a body-mass index ("BMI") of 40 or above; Oliver's height and weight put him at a BMI of 53.1. *Id.*

At Milan Federal Correctional Institution ("FCI Milan"), where Oliver is incarcerated, 72 prisoners had tested positive for COVID-19 as of May 26, 2020. Of those individuals, 64 have recovered, and three have died. There are also 55 Milan FCI employees who have tested positive for the virus; approximately 52 of those have recovered and returned to work.

## DISCUSSION

Oliver has not presented facts or legal authority that would permit the Court to transfer him to home confinement, or to reduce his sentence by granting compassionate release under the First Step Act. In general, sentencing courts lack jurisdiction to dictate a prisoner's place of confinement to the BOP. *United States v. Jalili*, 925 F.2d 889, 893–94 (6th Cir. 1991) ("While a judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served.") (citation omitted). And this Court has no new authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. 116-135, 134 Stat. 281, § 12003(b)(2), to order that Oliver serve the remainder of his sentence in home confinement. Concerning compassionate release, the Court finds that it cannot reduce Oliver's ten-year mandatory minimum sentence— certainly not to time served—consistent with the sentencing factors set

4

forth in 18 U.S.C. § 3553(a). For this reason, the motion for compassionate release will be denied.

I.  **The Court lacks jurisdiction to transfer Oliver to home confinement under the CARES Act.**

Oliver asks the Court to "permit[ ] him to serve the balance of his sentence in strict home detention." ECF No. 366, PageID.2493. But the exclusive authority to determine a prisoner's place of incarceration—including home confinement—rests with the BOP, not with the sentencing court. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . ."). Such a decision "is not reviewable by any court." 18 U.S.C. § 3621(b). At most, there is some precedent suggesting the Court can recommend to the BOP that Oliver be transferred to home confinement. But it declines to do so given that Oliver still has more than nine years of his ten-year sentence left to serve.

The CARES Act provides that the BOP, if so authorized by the Attorney General, "may lengthen the maximum amount of time for which . . . [it] is authorized to place a prisoner in home confinement" under § 3624(c). Consistent with this language, the United States Attorney General, William Barr, issued a memorandum directing the BOP to "prioritize" requests by prisoners to be granted home confinement in connection with the ongoing pandemic. *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*, OFFICE

5

OF THE ATTORNEY GENERAL, Mar. 26, 2020. In assessing which prisoners should be released to home confinement, the Attorney General instructed the BOP to consider age, health, facility security level, conduct in prison, crimes of conviction, and any release plan, among other factors. *Id.* The BOP has to date released more than 2,643 federal prisoners consistent with the Attorney General's directive. ECF No. 373, PageID.1519 (Govt. Resp. Br.).

But the CARES Act does not authorize courts to transfer a prisoner to home confinement for the remainder of his sentence. *See United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020). Courts in this district have recognized that under the CARES Act the authority to transfer a prisoner to home confinement remains "squarely allocated" to the BOP. *See Miller v. United States*, No.16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (same). *See also United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("The Court does not have authority to dictate placements to the BOP."). The CARES Act therefore does not alter the fact that this Court lacks jurisdiction to transfer Oliver to home confinement.

Although at least one Court in this district has held that a sentencing court may nevertheless *recommend* to the BOP that a prisoner be placed in home confinement, the Court does not find such a

6

recommendation appropriate here. *See, e.g., Doshi*, 2020 WL 1527186 (considering prisoner's crime of conviction, risk of recidivism, lack of threat to public safety, and spread of COVID-19 in prisons to inform judicial recommendation of transfer to home confinement). Oliver's crime was serious, and the Court is concerned that he began participating in a major drug-distribution operation after having already served time for similar conduct—albeit on a smaller scale—in the Michigan Department of Corrections. Further, Oliver has not provided the Court with any information concerning his release plan, such as the location where he would be released, and who else resides there. In any case, the entire punitive nature of the sentence would be turned upside down if the Defendant, who received a ten-year prison term for serious drug trafficking, were allowed to serve less than one year in prison, followed by more than nine years in home confinement.

**II. Oliver is not a good candidate for compassionate release under the First Step Act.**

The circumstances in which a sentencing court may "modify a term of imprisonment once it has been imposed" are limited by 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018. Courts can modify a sentence only upon motion by the Director of the BOP, or upon motion by the defendant. Generally, a defendant must exhaust administrative remedies before filing his own motion for compassionate release. Putting the exhaustion requirement aside for a moment, a sentencing court may

7

reduce the term of imprisonment if, "after considering the factors set forth in section 3553(a) . . . it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In Oliver's case, the Court finds that reducing his sentence to time served (as would be required to justify his immediate release) cannot be squared with the sentencing factors contained in 18 U.S.C. § 3553(a). For these reasons, the Court will deny Oliver compassionate release.

### A. The Court need not reach the exhaustion issue.

Oliver admits he did not exhaust his administrative remedies with the BOP before moving this Court for compassionate release. ECF No. 366, PageID.2495. Although a growing number of district courts have held that courts may consider § 3582(c)'s exhaustion requirement waived in the context of a global pandemic and consequent inundation of the BOP with requests for compassionate release, this Court need not reach the question of whether exhaustion is mandatory. Reduction of Oliver's sentence to time served cannot be granted consistent with the traditional sentencing factors enumerated in § 3553(a). Accordingly, the issue of compassionate release in Oliver's case does not turn on whether exhaustion is mandatory.

To demonstrate exhaustion in the compassionate-release context, a defendant must have "fully exhausted all administrative rights to

8

appeal" the BOP's decision not to move for compassionate release on his behalf, or waited for the lapse of 30 days from the date the facility's warden received his request asking the BOP to move for compassionate release, whichever comes first. 18 U.S.C. § 3582(c)(1)(A).

The issue of whether courts may bypass the exhaustion requirement for defendants seeking compassionate release is currently on appeal before the Sixth Circuit. *See United States v. Alam*, No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020), No. 20-1298 (6th Cir. 2020). Several district courts, including some in this district, have held that courts can consider the exhaustion requirement waived given the unprecedented circumstances created by the COVID-19 pandemic. *See, e.g., United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (Hood, C.J.); *United States v. Coles*, No. 18-cr-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (Drain, J.); *Miller v. United States*, No. CR 16-2022201, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020); *United States v. Perez*, 17 Cr. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020). These opinions have generally relied on a recent Second Circuit case holding that "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice," as may well be the case during a dangerous pandemic. *Washington v. Barr,* 925 F.3d 109, 119 (2d Cir. 2019).

Other district courts have reasoned that the exhaustion requirement is waivable because the language in 18 U.S.C. § 3582(c)(1) demonstrates that Congress did not intend for exhaustion to be mandatory. *United States v. Haney*, No. 13-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (quoting *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *1 (S.D.N.Y. Apr. 14, 2020)). *See United States v. Atwi*, No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (Michelson, J.). More specifically, these courts have reasoned that, by deeming exhaustion fulfilled if the BOP does not respond to a prisoner's request within 30 days, Congress intended only "for the defendant to have the right to a meaningful and prompt *judicia*l determination of whether he should be released." *Haney*, 2020 WL 1821988, at *3 (quoting *Russo*, 2020 WL 1862294, at *1) (emphasis in original). In the pandemic context, these courts reason, "meaningful and prompt judicial determination" permits sidestepping of the exhaustion requirement.

In contrast, still other district courts have staked out the opposite position, holding that the exhaustion requirement is mandatory and cannot be waived. *See, e.g., United States v. Alam*, Case No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (Cox, J.); *United States v. Hofmeister*, No. 5:16-13-KKC, 2020 WL 181136 (E.D. Ky. Apr. 9, 2020).

Because Oliver acknowledges he has not exhausted his remedies with the BOP, the question of whether his motion for compassionate

10

release is procedurally barred depends on whether the exhaustion requirement is mandatory. Because that issue is currently on review before the Sixth Circuit, and the Court finds that Oliver's motion for compassionate release must be denied on the merits, it will not reach the question of whether the exhaustion requirement is mandatory (and therefore whether Oliver's motion is procedurally barred).

### B. Oliver has not demonstrated extraordinary and compelling reasons warranting a sentence reduction consistent with the § 3553 sentencing factors.

Proceeding to the merits of Oliver's request, the Court finds that he has not demonstrated that "extraordinary and compelling reasons" justify reducing his sentence in light of the 18 U.S.C. § 3553 sentencing factors this Court must consider. In light of COVID-19's rapid spread among prison populations, severe obesity and asthma could conceivably present "extraordinary and compelling reasons" warranting compassionate release in some circumstances. But on the specific facts of this case the Court cannot reduce Oliver's lengthy sentence to time served without severely undermining the § 3553 sentencing factors.

The compassionate-release statute provides that a sentencing court may reduce a term of imprisonment it imposed "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The term "extraordinary and compelling reasons" has been defined by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13, comm. n.1.[1] It encompasses four categories: the defendant's medical condition, age, family circumstances, and a catchall of "other reasons." *Id.* Relevant medical considerations described by the Sentencing Commission include whether the defendant is suffering from terminal illness or "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at comm. n.1(A). The medical conditions referenced in § 1B1.13, comm. n.1 have not been updated since 2018 and accordingly are not tailored to the current COVID-19 pandemic. Concerning age, the Sentencing Commission directs courts and the BOP to consider whether the defendant is over 65, is deteriorating "because of

---

[1] Some courts have held that, because the Sentencing Guideline that defines "extraordinary and compelling reasons" predates the First Step Act, Guideline § 1B1.13, comm. n.1 does not constrain a court's assessment of whether extraordinary and compelling reasons justify compassionate release under the First Step Act. *See, e.g., United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020) (collecting cases); *United States v. Rodriguez*, CR17-00021, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019).

the aging process," or has served "at least 10 years or 75 percent" of his or her term of imprisonment." U.S.S.G. § 1B113, comm. n.1(B).

At least one court in this district has found that the COVID-19 pandemic "as applied" to a defendant seeking compassionate release "presents compelling and extraordinary reasons for" sentence modification. *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *5 (E.D. Mich. May 15, 2020) (Hood, C.J.). In that case, Chief Judge Hood reasoned that the defendant's "serious" health condition, combined with the impossibility of practicing social-distancing in prison, diminished his ability to "provide self-care" within the prison facility—a concern articulated in the Sentencing Guidelines. *Id.* at *5 (quoting U.S.S.G. § 1B1.13, comm. n.1(B)).

The "extraordinary and compelling reasons" Oliver proffers for compassionate release are his severe obesity and asthma. He argues that these preexisting medical conditions, in tandem with the proliferation of COVID-19 in cramped BOP facilities including FCI Milan, makes him especially vulnerable to suffering serious illness or death as a result of the disease. ECF No. 366, PageID.2496. The Court in no way minimizes Oliver's genuine concern that his severe obesity and asthma place him at higher risk for suffering serious complications from COVID-19. Although the government contends that Oliver's asthma is mild, and indeed the CDC identifies only "moderate-to-severe" asthma—not any form of asthma—as a potential virus comorbidity, it appears undisputed that

13

Oliver's severe obesity makes him more vulnerable to the virus than the typical prisoner. The Court accordingly weighs this condition in favor of defendant. *See* ECF No. 373, PageID.2531–32 *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

The Court is further troubled by the fact that FCI Milan, despite measures staff have implemented to stem the virus's propagation there, has had 72 prisoners diagnosed with COVID-19. Although the facility only has five active cases among its inmate population as of May 26, 2020, the fact that prisoners are only tested for the virus if they display symptoms suggests that number may in reality be much higher. Of the facility's 72 cases, three individuals have died, and approximately 64 have recovered. In addition to Milan's COVID-19 problem, the Court acknowledges that conditions of confinement in all BOP facilities, where prisoners share small cells and use the same bathrooms and shower facilities, make them generally "more potentially conducive to the transmission of COVID-19 than elsewhere." *Haney*, 2020 WL 1821988, at *6.

Oliver's asthma and severe obesity plausibly fit within the Sentencing Commission's definition of "extraordinary and compelling reasons." Although these problems may not fall within the category of "a serious physical or medical condition" during ordinary times, in the

14

context of the COVID-19 pandemic the CDC has identified at least severe obesity as one of only 11 enumerated medical conditions that cause an individual to be at higher risk for the virus. During a dangerous respiratory virus pandemic, Oliver's severe obesity (and to some extent his asthma) could "substantially diminish" his ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B113, comm. n.1(a). If Oliver were to contract the virus, it is beyond the ability of this Court to assess—as the Guideline instructs—whether Oliver would be "expected to recover." *Id.* at comm. n.1(A). As another court in this district put it, although "COVID-19 alone cannot allow the release of all prisoners who request relief . . . a defendant who meets the medical conditions category combined with a valid threat of contracting COVID-19 may qualify for relief." *Pomante*, 2020 WL 2513095, at \*6. Indeed, several courts have found that, for high-risk individuals, the conditions of confinement in prison satisfy the Commission's definition of "extraordinary and compelling reasons for release" because those conditions make it impossible for vulnerable individuals to protect themselves from contracting the highly contagious virus. *See, e.g., United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at \*5 (E.D. Mich. May 7, 2020) (collecting cases).

But the Court must also consider all of the sentencing factors contained in 18 U.S.C. § 3553(a), whether release is appropriate in light of those factors, and whether it is possible for the Court to determine that

the defendant does not represent a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). As to the sentencing factors, the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, whether the sentence will serve deterrence goals, and the need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a). Upon careful consideration of these factors, the Court concludes that reducing Oliver's sentence to time served would be inappropriate. The Court also is unable to determine that Oliver does not represent a danger to the community.

Oliver was convicted of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), a serious offense. According to the government, Oliver was "a kilogram quantity supplier" to a major drug-trafficking organization that operated across multiple states. ECF No. 290, PageID.1928 (Gov't Sentencing Mem.). He acknowledged participating in the drug-trafficking conspiracy for almost three years and admitted intent to distribute at least one kilogram of heroin and at least 500 grams of cocaine. ECF No. 220, PageID.1678. Oliver had previously been convicted of drug-trafficking in Michigan state court and was sentenced to 23 months to 20 years for that offense. ECF No. 290, PageID.1933. After serving that sentence in the

16

custody of the Michigan Department of Corrections, Oliver again began participating in drug-trafficking, leading to the instant conviction.

Although the government calculated the applicable Sentencing Guideline range as 135 to 168 months, this Court imposed a below-Guideline sentence of 120 months in prison, and five years of supervised release. ECF No. 220, PageID.1679; ECF No. 301, PageID.2109. This 120-month sentence was the lowest Oliver could have received, as the offense he pled guilty to carries a mandatory minimum sentence of 120 months. Two of Oliver's co-conspirators were sentenced to 135 months and 141 months, respectively. ECF No. 290, PageID.1934. Although those co-conspirators may have played a more integral role in the drug-trafficking operation, neither had any prior convictions. ECF No. 290, PageID.1934. Granting Oliver compassionate release and reducing his sentence to time served when he has served only three months of a ten-year sentence would lead to unwarranted sentencing disparities and improperly minimize the serious nature of his drug-trafficking offense.

Sentencing Guideline § 1B1.13(2) further specifies that a sentence reduction is only appropriate "if the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." Oliver's motion did not specifically address dangerousness. But the government contends that Oliver's pattern of drug-trafficking, in addition to the fact that he allegedly possessed a firearm as a convicted felon, indicates he would endanger the public if released. ECF No. 373,

PageID.2523. Although the record on Oliver's potential dangerousness could be more developed, the seriousness of Oliver's drug trafficking offense conduct, and his recent history of similar criminal behavior, is such that the Court is unable to determine that his release would not present a danger to the community. Oliver is therefore not eligible for compassionate release.

## CONCLUSION

For these reasons, Anthony Oliver's motion for compassionate release (ECF No. 366) will be **DENIED**. The Court also **DENIES** Oliver's request for a judicial recommendation to the Bureau of Prisons that he be transferred to home confinement to serve the balance of his sentence. As to Oliver's request for a judicial recommendation that the Bureau of Prisons exercise its furlough authority to temporarily release him to home confinement for the duration of the pandemic, that request is **DENIED WITHOUT PREJUDICE**. The Court is unable to evaluate this request because Oliver provided no detailed information about where he seeks to be released to, with whom, what conditions could be fashioned to protect the community, and what criteria would determine the date for his return to a federal correctional facility.

**SO ORDERED.**

Dated: May 28, 2020         s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

18